Filed 2/16/24  In re D.H. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re D.H., a Person Coming Under the Juvenile Court Law. | H051177 (Santa Cruz County Super. Ct. No. 21JU00149) |
| SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. S.E., Defendant and Appellant. | |

Appellant S.E. (Mother) seeks review of the juvenile court's order terminating her parental rights as to minor child, S.H.  The sole issue on appeal is whether the juvenile court erred in finding that the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) was inapplicable.  Mother contends respondent Santa Cruz County Human Services Department (the Department) failed to comply with the inquiry and notice requirements of ICWA.  We agree and conditionally reverse the order and remand for the limited purpose of compliance with ICWA.

# I. FACTUAL AND PROCEDURAL BACKGROUND[1]

The Department's inquiry into D.H.'s status as an Indian child under ICWA began in 2016.[2]  The Department filed a petition for dependency pursuant to Welfare and Institutions Code section 300, subdivision (b) (the 2016 matter),[3] alleging that mental health problems and aggression by both Mother and D.H.'s father, D.L.H. (Father), put D.H. at risk.  The Department was aware that ICWA could apply, as Mother reported that she had Cherokee ancestry on both sides of her family; at an arraignment hearing, Mother reported that her great-grandmother was a member of the Cherokee tribe.  Father had not completed his ICWA form at the time of the initial hearing.  However, Father indicated at the hearing that he was not aware of any Native American ancestry.  Father's mother (paternal grandmother) was also present at the hearing, as D.H. had been placed with her.  She stated that her grandmother was "Montana Blackfoot."  The court instructed both parties to provide additional information about potential Indian ancestry to the Department.

Based on the information provided by the parties at the hearing, the Department sent notice of the 2016 matter to the Bureau of Indian Affairs, the Cherokee tribes, and the Blackfeet tribe.  The Department received responses from Cherokee Nation, United Keetoowah Band of Cherokee Indians in Oklahoma, Eastern Band of Cherokee Indians,

---

[1] " 'In accord with the usual rules on appeal, we state the facts in the manner most favorable to the dependency court's order.'  [Citation.]  In light of the limited scope of this appeal, we provide an abbreviated summary of the dependency proceedings."  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1046 (*D.S.*).)

[2] Mother's request for judicial notice, filed September 28, 2023, and the Department's request for judicial notice, filed October 25, 2023, are granted.  The court takes judicial notice of the documents attached to each request from the prior dependency action, Santa Cruz County Superior Court Case No. 16JU00198.  The Department's request to augment the record on appeal with documents contained in the record for prior appeal number H049821 is deemed a request to take judicial notice of that record, and is granted.  Mother relies on that record in her appellant's opening brief.

[3] Subsequent undesignated statutory references are to the Welfare and Institutions Code.

and the Blackfeet Tribe indicating that D.H. was not considered an Indian child as defined by ICWA[4] for their purposes, based on the information provided for D.H., Mother, Father, and paternal grandmother.  Based on these responses, the juvenile court found that D.H. was not an Indian child and ICWA did not apply to the 2016 matter.  The Department did not obtain further information about the applicability of ICWA in the 2016 matter after this finding.  The 2016 matter was ultimately dismissed.

In 2021, the Department again detained D.H. and filed another juvenile dependency petition.  In the petition, the Department stated that it was aware that an ICWA inquiry had been completed by the juvenile court, and based on that inquiry there was no reason to believe D.H. was an Indian child.  Mother was present at the initial detention hearing.  The juvenile court had difficulty communicating with her during the hearing, noting its concern that her "emotional state" was compromising her ability to understand the "gravity" of the situation.  Because of Mother's numerous interruptions, the court had her removed from the courtroom during the reading of the petition.  After Mother left the hearing, the Department indicated that it had no reason to believe D.H.'s ICWA status had changed since the 2016 matter, but suggested the court should readdress the matter at a later hearing.  The court took judicial notice of the ICWA finding in the 2016 matter.  Father was not at the initial hearing, as he was in custody in state prison.

In its subsequent reports, the Department indicated that ICWA did not apply, and stated that the juvenile court took judicial notice of the 2016 matter, with no additional discussion.  The juvenile court did not address ICWA at the continued contested detention hearing.  Both Mother and Father were in custody at the time of that hearing, although they each still appeared remotely at the hearing.  The Department thereafter

---

[4] An Indian child is defined under ICWA and California law as "any unmarried person who is under the age of eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. . . ."  (25 U.S.C. § 1903(4); § 224.1, subd. (b).)

filed an amended petition, in which it repeated its contention that the juvenile court had completed an ICWA inquiry and it had no reason to believe ICWA applied.

The juvenile court held a settlement conference and jurisdiction and disposition hearing in January 2022. Father and paternal grandmother both appeared, but Mother did not. The court denied her attorney's request for continuance, finding that Mother received proper notice of the hearing. The attorney indicated that she had not been able to communicate with Mother, and thus could not comment regarding Mother's position in the matter. Father submitted on the amended petition.

Before the court issued the necessary orders, the Department raised an ICWA issue, noting that the court had not completed a voir dire of the parents. The court questioned Father, who confirmed that he was not eligible for membership in a Native American tribe, and was not aware of anyone in his family who was a member or eligible for membership in a Native American tribe, who lived on an Indian reservation, or who received any financial support from a Native American tribe. The court then asked paternal grandmother if she "want[ed] to address any of those issues," to which she replied, "No, I would like to say thank you to the Court." The court made a finding that there was no reason to know and no reason to believe that ICWA applied to D.H. The court then sustained the allegations in the first amended petition, ordered the removal of D.H. from Mother's custody, and ordered that both parents receive reunification services.[5]

As the matter proceeded through several reunification review hearings, the Department provided reports indicating it did not conduct further inquiry regarding D.H.'s ICWA status. In a June 2022 report, the Department reported that the court determined at the January 2022 hearing that ICWA did not apply. The Department also

_____

[5] Appeal No. H049821 was Father's appeal from the January 2022 disposition orders as they pertained to Mother's visitation with D.H. Father voluntarily dismissed that appeal.

stated that Mother "did not identify as having Indian heritage or give any indication that [D.H.] was of Indian heritage" during a previous case. In December 2022, the Department reported that the court, in 2016, made a finding that ICWA did not apply "based on responses from the tribes[.]" The juvenile court did not revisit its ICWA findings during any of these hearings.

In February 2023, the juvenile court terminated reunification services to both parents and set a selection and implementation hearing pursuant to section 366.26. The court did not address D.H.'s ICWA status. In addition to Mother, Father, and paternal grandmother, the Department gave notice of the section 366.26 hearing to a person identified as D.H.'s maternal grandmother, D.L.A. Prior to the section 366.26 hearing, the Department filed a declaration of due diligence, outlining its efforts to locate Mother and give her notice of the hearing, as she absented herself from the courtroom before the juvenile court set the hearing date. The Department contacted D.L.A., who is listed on Mother's birth certificate. D.L.A. confirmed that she had married into a family with Mother's surname, but claimed she did not know Mother. There is nothing in the record indicating the Department inquired into D.L.A.'s Native American status during this conversation. The Department also contacted paternal grandmother to obtain contact information for Father's father, D.L.J. (paternal grandfather). In doing so, paternal grandmother confirmed that she was not then married to paternal grandfather. Nothing in the record indicates the Department attempted to contact paternal grandfather.

In the report it filed prior to the section 366.26 hearing, the Department reiterated its contention that ICWA did not apply, citing to the 2016 finding "based on responses from the tribes[.]" Aside from generally taking "judicial notice of all prior findings, orders and judgments in this proceeding," the court did not address D.H.'s ICWA status at the section 366.26 hearing, held in June 2023. The court found by clear and convincing evidence that it was likely D.H. would be adopted, and terminated the

5

parental rights of both Mother and Father. Mother timely appealed from the June 2023 order following the section 366.26 hearing.[6]

## II. DISCUSSION

On appeal, Mother contends the Department did not comply with the broad inquiry requirements of ICWA, as the Department failed to ask each parent's extended family about possible Indian ancestry. Mother further argues that the Department and juvenile court erred in relying on the ICWA inquiry in the 2016 matter, which was also inadequate.

### A.　　General Legal Principles

In enacting ICWA, Congress established standards for state courts to follow before removing Indian children from their families and placing them in adoptive homes. (*D.S.*, *supra*, 46 Cal.App.5th at p. 1048.) California enacted various provisions of ICWA; in 2019, the state amended its statutes to conform to new federal regulations concerning ICWA compliance, "including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. [Citations.]" (*Ibid.*)

Under the relevant provisions, commencing on initial contact with a child, both the county welfare department, such as the Department, and the juvenile court have an "affirmative and continuing duty" to determine whether ICWA applies. (§ 224.2, subd. (a).) "[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1052.) "First, from the [Department's] initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all

---

[6] Although the order did not include an express ICWA finding, and Mother did not challenge the ICWA finding made at the jurisdiction and disposition hearing in January 2022, Mother may raise an ICWA challenge in this appeal based on the juvenile court's continuing duty to inquire regarding D.H.'s status as an Indian child in all dependency proceedings. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 10.) The validity of the June 2023 order "is necessarily premised on the juvenile court's fulfillment of that duty" and "there is nothing improper or untimely about [Mother's] contention in this appeal that the juvenile court erred in discharging that duty." (*Id.* at p. 11.)

involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).)" (*Ibid.*) That duty "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members,[7] others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child. . . ." (§ 224.2, subd. (b).) While the duty to inquire under section 224.2, subdivisions (a) and (b) is often referred to as an "initial" duty, as it begins with the initial contact, it continues throughout the dependency proceedings. (*In re J.C.* (2022) 77 Cal.App.5th 70, 77.) The burden is on the Department and the juvenile court—not the child's parents or family—to develop information indicating that a child is or may be an Indian child. (*In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 785.)

If the "initial inquiry creates a 'reason to *believe*' the child is an Indian child," the second duty arises: "the [Department] 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' ([§ 224.2], subd. (e), italics added.)" (*D.S.*, *supra*, 46 Cal.App.5th at p. 1052.) The Department must undertake several steps to satisfy the duty of further inquiry. "First, the [Department] must interview the parents, Indian custodian, and extended family members to gather relevant information, specified by statute, regarding the details of the child's birth, family members, and possible tribal affiliations. (§ 224.2, subd. (e)(1); see also § 224.3, subd. (a)(5).)" (*D.S.*, at p. 1052.) The Department must also contact the Bureau of Indian Affairs and the State Department of Social Services for assistance in obtaining additional information necessary to determine the child's eligibility under ICWA. (§ 224.2, subd. (e)(2); *D.S.*, at pp. 1052-1053.) Finally, the Department "must contact 'the tribe or tribes and any other person that may reasonably be expected to have

---

[7] "[T]he term 'extended family members' shall mean 'a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.' (25 U.S.C. § 1903(2); accord § 224.1, subd. (c) [adopting ICWA definition of extended family member].)" (*D.S.*, *supra*, 46 Cal.App.5th at p. 1049, fn. 6.)

information regarding the child's membership, citizenship status, or eligibility.' [§ 224.2, subd. (e)(3).]" (*D.S.*, at p. 1053.)

If the further inquiry "results in a reason to *know* the child is an Indian child," the third duty, which requires compliance with the formal notice requirements of section 224.3, arises. (*D.S.*, *supra*, 46 Cal.App.5th at p. 1052.) "The juvenile court may find that ICWA does not apply to a proceeding if it determines 'that proper and adequate further inquiry and due diligence as required . . . have been conducted and there is no reason to know whether the child is an Indian child . . . .' (§ 224.2, subd. (i)(2).)" (*In re K.H.* (2022) 84 Cal.App.5th 566, 589 (*K.H.*).)

This court has previously held that we review a juvenile court's ICWA findings for substantial evidence, and if the facts are undisputed, as they are here, we independently review whether ICWA's requirements have been satisfied. (*In re I.F.* (2022) 77 Cal.App.5th 152, 162-163.) Other California appellate courts have reviewed alleged errors concerning ICWA findings under a hybrid substantial evidence and abuse of discretion standard. (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004-1005 (*Ezequiel G.*); accord *K.H.*, *supra*, 84 Cal.App.5th at p. 589.) These courts agreed that the first element to a juvenile court's finding that ICWA does not apply—whether there is reason to know whether the child is an Indian child—is "fundamentally a factual determination" that should be reviewed for substantial evidence. (*Ezequiel G.*, at p. 1004; see *In re Caden C.* (2021) 11 Cal.5th 614, 639-640 [discussing application of a hybrid standard in dependency proceedings].) However, they determined that the second element—whether a "proper and further inquiry and due diligence as required in this section have been conducted" (§ 224.2, subd. (i)(2))—requires the juvenile court to " 'engage in a delicate balancing' [citation] to assess whether an ICWA inquiry was appropriate and sufficient in light of the facts of a particular case," which is a discretionary function that should be reviewed for an abuse of discretion. (*Ezequiel G.*, at p. 1005; *K.H.*, at p. 589.)

8

**B.      The Juvenile Court Erred in its Finding that ICWA was Inapplicable**

Based on the record, we conclude that under either the substantial evidence standard of review or the hybrid standard set forth in *Ezequiel G.*, the juvenile court erred in its finding that ICWA was inapplicable.

There is no evidence in the record that the Department made any further inquiry into D.H.'s ICWA status in this matter beyond adopting the 2016 finding that ICWA did not apply. While that finding was based on the responses from four tribes, those responses considered only the limited information provided about D.H., Mother, Father, and paternal grandmother in 2016. Given the "affirmative and continuing duty to inquire" whether D.H. is an Indian child, as set forth in section 224.2, subdivision (a), relying on a five-year old determination did not satisfy that duty.[8] There is no evidence in the record that the Department undertook any new inquiry when it filed the new petition in 2021, aside from asking the juvenile court to voir dire Father at the January 2022 jurisdiction and disposition hearing. Under section 224.2, subdivision (b), the Department should have, at minimum, asked D.H., the parents, and known extended family members whether D.H. is or may be an Indian child. The Department does not cite any legal authority indicating that its duty under section 224.2, subdivision (b) changes in a subsequent dependency proceeding, or that it can rely on the findings from a prior proceeding without conducting any additional inquiry. The Rules of Court promulgated to address ICWA as codified in the Welfare and Institutions Code suggest that the Department is required to make the same inquiry regardless of whether it is an initial or subsequent petition, but need only provide the information with a subsequent petition if there is "new information." (Cal. Rules of Court, rule 5.481(a)(1).) It is

---

[8] As we conclude that the Department's inquiry in the 2021 matter was insufficient to meet its duty under ICWA, we need not consider whether the ICWA inquiry in the 2016 matter was inadequate.

impossible for the Department to determine if there is new information without undertaking the required inquiry.

While both the Department and the juvenile court had difficulty communicating with Mother, there is no evidence in the record that either made any attempt to ask Mother if there was new information about her potential Indian heritage following the 2021 petition. In 2016, Mother reported potential Indian heritage on both sides of her family, claiming that her great-grandmother was Cherokee. Mother did not provide additional information to the Department at that time, such as names, dates of birth, and contact information for relatives. Thus, the Department had limited information to provide to the Cherokee tribes in 2016. The record here is devoid of any indication that the Department sought to obtain such information after filing the new petition in 2021.[9] The fact that Mother was unavailable at times does not, in and of itself, lessen the Department's burden. The Department was in communication with Mother at various times during the proceedings. Moreover, the burden is on the Department to comply with its inquiry duty when a parent is unavailable. (See Cal. Rules of Court, rule 5.481(a)(3).)

Although Mother did not provide contact information for her extended family during the 2016 matter, prior to the June 2023 hearing, the Department knew the identity of the person identified as Mother's mother on her birth certificate: D.L.A. This was new information that was not provided to the relevant tribes in the 2016 matter. In giving notice in 2016, the Department indicated that it did not know D.H.'s maternal grandmother's name or other identifying information, other than that she lived in New Mexico. Nor is there any indication the Department undertook further ICWA-related inquiry concerning D.L.A. once it learned her name and address.

---

[9] In one of its reports to the juvenile court in 2022 the Department claimed that Mother "did not identify as having Indian heritage or give any indication that [D.H.] was of Indian heritage" during a previous case, which is a misstatement of the record from the 2016 matter.

The Department argues that it was "unable to locate maternal grandmother," because the person they contacted in 2023 "denied that she was [M]other's mother." The discussion of the Department's contact with D.L.A. in the record is more nuanced. The Department employee who made the contact stated, "During the phone call, the undersigned identified herself and the purpose of her call. [D.L.A.] answered hesitantly and mentioned that she does not know who [Mother] is. She confirmed that she married into the [E.] family long ago but has lost contact with the family." Even if D.L.A. is not Mother's mother, she expressed familiarity with Mother's family. Given that she is listed as Mother's mother on Mother's birth certificate, there was sufficient basis for the Department and juvenile court to consider D.L.A. an extended family member for purposes of section 224.2, subdivision (b), and inquire whether she had any information concerning D.H.'s status as an Indian child. Under California Rules of Court, rule 5.481(a)(5), "Whenever new information is received, that information must be expeditiously provided to the tribes." As it does not appear the Cherokee tribes had any information about Mother's family when the inquiry was first made in 2016, D.L.A.'s contact information was "new" and should have been provided to them.[10]

With regard to the inquiry of Father's relatives, Mother contends the Department and juvenile court failed to comply with the duty of inquiry by failing to contact paternal grandfather once his contact information became known. The juvenile court did comply with section 224.2, subdivision (c) by asking Father, at the jurisdiction and disposition hearing, questions that would establish whether he knew or had reason to know that D.H. was an Indian child. However, Father's denial of Indian ancestry is not a sufficient reason for the Department to end its inquiry. (See, e.g., *In re Antonio R.* (2022) 76 Cal.App.5th 421, 431 [agency failed in initial ICWA inquiry when it did not ask

---

[10] Notably, the Eastern Band of Cherokee Indians stated, in its 2016 letter indicating D.H. was not considered an Indian child for the tribe's purposes, that "Any incorrect or omitted family documentation could invalidate this determination."

11

extended family members about Native American ancestry, relying on parents' and paternal great-grandmother's denials]; *In re Y.M.* (2022) 82 Cal.App.5th 901, 909-910 (*Y.M.*) [initial ICWA inquiry deficient when agency relied only on parents' denials and failed to ask any extended family members including paternal grandmother and paternal grandfather about Native American ancestry]; *K.H.*, *supra*, 84 Cal.App.5th at pp. 605-606 [initial inquiry deficient when it did not extend further than the child's parents].)

At the same hearing, the juvenile court did not ask paternal grandmother specific, detailed questions to determine if she knew or had reason to know that D.H. was an Indian child. After discussing the issue with Father and stating that it was going to make findings that there was no reason to know or believe that D.H. was an Indian child, the court asked paternal grandmother if she "want[ed] to address any of those issues[,]" to which she replied "No." In context, this exchange was sufficient to satisfy the inquiry duty under section 224.2, subdivision (c).

However, while the juvenile court may have satisfied its inquiry duty at the jurisdiction and disposition hearing, the Department did not meet its burden once it learned the name and contact information for paternal grandfather. The Department concedes that it did not contact paternal grandfather to inquire regarding the possibility of whether ICWA applies to D.H., and that its failure to do so could be reversible error depending on what standard this court applies to determine whether the error was prejudicial. Thus, having established that the Department did not satisfy its initial duty of inquiry in the 2021 matter, we turn to the issue of prejudice.

## C.    The Error was Prejudicial

Where the Department does not satisfy its initial duty of inquiry under ICWA, we will conditionally reverse the order and remand unless the error is harmless, as the error is one of state law and the California Constitution precludes reversal absent a resulting miscarriage of justice. (Cal. Const., art. VI, § 13; *K.H.*, *supra*, 84 Cal.App.5th at pp. 606-607.) There is a split in authority in the California appellate courts "regarding the proper

standard to apply in determining the prejudicial effect of an agency's failure to comply with its section 224.2, subdivision (b) duty of initial inquiry." (*Y.M.*, *supra*, 82 Cal.App.5th at p. 911.) The issue is pending before the California Supreme Court in *In re Dezi C.* (2022) 79 Cal.App.5th 769 (*Dezi C.*), review granted September 21, 2022, S275578.

Mother urges this court to find that the error is reversible per se, citing *In re H.V.* (2022) 75 Cal.App.5th 433, 438, and *In re A.C.* (2022) 86 Cal.App.5th 130, 131-132, each of which finds the relevant agency's noncompliance to constitute per se reversible error with minimal discussion. The Department argues against per se reversal, contending that under the standards articulated in *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*), *Dezi C.*, *supra*, 79 Cal.App.5th 769, and *Ezequiel G.*, *supra*, 81 Cal.App.5th 984, the error was not prejudicial to Mother.[11] We need not determine whether the error is per se reversible. Applying any of the lesser standards under *Benjamin M.* or *Dezi C.*, reversal is required here.[12]

In *Benjamin M.*, the Fourth District set a standard of "readily obtainable information," under which the error is reversible "where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that

---

[11] The Department concedes that its failure to contact and inquire of paternal grandfather would be cause for reversal if the court applies the per se reversal standard. The Department also recognizes that at least one California appellate court has held that "a parent asserting failure to inquire must show—at a minimum—that, if asked, he or she would, in good faith, have claimed some kind of Indian ancestry" before reversal is appropriate. (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1069.) The Department does not argue that this is an appropriate standard to apply in this matter.

[12] The Department suggests, without sufficient explanation, that the *Ezequiel G.* court set forth a different standard than the *Dezi C.* court. It did not. It adopted the *Dezi C.* rule and determined that there was nothing in the record that would give the court "a reason to doubt the accuracy of the parents' denial that they or their children were members of or eligible for membership of an Indian tribe. . . ." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at pp. 1014, 1015.) Thus, we will not separately discuss the application of the *Ezequiel G.* standard.

there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) Information that may bear meaningfully on the issue of whether a child is an Indian child "does not require 'proof of an actual outcome (that the parent may actually have Indian heritage).' [Citation.] The missing information need only be relevant to the ICWA inquiry, 'whatever the outcome will be.' " (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 679 (*Ricky R.*).)

Here, Mother indicated in the 2016 matter that she had Indian heritage on both sides of her family. The Department did not provide contact information for any of Mother's family to the Cherokee tribes when it made inquiry of them regarding D.H.'s ICWA status. Prior to the June 2023 order at issue in this appeal, the Department had obtained additional contact information for D.L.A., who the record reflects is a likely member of Mother's extended family. The Department could have contacted D.L.A. to ask whether she had any Indian ancestry or if she knew whether D.H. had any such ancestry. Likewise, the Department could have asked paternal grandfather if he had Indian ancestry. The failure to inquire as to these extended relatives was therefore prejudicial under *Benjamin M.* (See *In re D.B.* (2022) 87 Cal.App.5th 239, 245; *Ricky R.*, *supra*, 82 Cal.App.5th at pp. 679-680.)

In *Dezi C.*, the Second District held that reversal is required only when "the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding." (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779, review granted; accord, *Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 1014.) "[A] reviewing court would have 'reason to believe' further inquiry might lead to a different result if the record indicates that someone reported possible American Indian heritage and the agency never followed up on that information." (*Dezi C.*, at p. 779.) In 2016, the Department pursued Mother's report of possible Indian heritage by providing her name to

14

the Cherokee tribes, based on her claim of Cherokee heritage. The Department did not provide the tribes with the names of Mother's parents. Notably, Mother stated that her great-grandmother was Cherokee. Once the Department had more specific information about maternal grandmother and paternal grandfather, it failed to take any further steps to investigate Indian ancestry. Given the specific information provided by Mother about her maternal heritage, there is reason to believe that further inquiry might lead to a different result.

For these reasons, we are unable to deem the Department's failure of inquiry harmless on this record.

## III. DISPOSITION

The juvenile court's order terminating Mother's parental rights is conditionally reversed, and the matter is remanded to the juvenile court for the limited purpose of ensuring compliance with ICWA. After the Department complies with the inquiry provisions of ICWA, if the juvenile court determines that the requirements of ICWA have been met, the court shall reinstate its order terminating Mother's parental rights. If, however, the juvenile court determines that further action is required to satisfy ICWA requirements, it shall conduct proceedings accordingly.

_____
Greenwood, P. J.

WE CONCUR:

_____
 Bamattre-Manoukian, J.

_____
 Wilson, J.

H051177 - In re D.H.; Santa Cruz County HSD v. S.E.